UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNA M. WHITE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>ELIZABETH K. RICHERT )<br>)<br>Respondent. )<br>-----------------------------------)<br>ELIZABETH K. RICHERT, )<br>)<br>Counter-Petitioner, )<br>)<br>v. )<br>)<br>ANNA M. WHITE )<br>KATHLEEN A. WHITE )<br>AND THOMAS J. WHITE, )<br>)<br>Counter-Respondents. ) | Case No. 15 C 8185<br><br>Magistrate Judge Sidney Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

Before us for consideration are Petitioner/Counter-Respondent Anna White's ("Petitioner" or "Anna") Motion to Dismiss (doc. # 53) the First Amended Counterclaim filed by Respondent/Counter-Petitioner Elizabeth Richert ("Respondent" or "Richert") (doc. # 51), and Third Party Respondents Kathleen White ("Kathleen") and Thomas White's ("Thomas") Motion to Dismiss (doc. # 60) the Third-Party Complaint filed by Richert (doc. # 52). For the following reasons, we grant Kathleen and Thomas's motion to dismiss the third-party complaint and grant in part and deny in part Anna's motion to dismiss the first amended counterclaim.

---

[1]On November 30, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 26).

## I.

We last addressed this long-running family saga in June 2016, when we denied Respondent's Motion to Dismiss (Order: doc. # 47). Respondent answered the complaint (doc. # 49) and then filed a counterclaim (doc. # 50). Her subsequently filed first amended counterclaim against Anna, Kathleen and Thomas, and the third-party complaint Richert filed against Kathleen and Thomas, are the subjects of the present motions to dismiss. While we will describe the factual allegations in more detail as they relate to the individual claims at issue in the motions, a short overview of the case is in order.

The following facts are taken from the complaint and counterclaim and are set forth here only to provide background; we make no determination as to their truth or accuracy (we will address the standards for the motion to dismiss below). Anna contends that, after the death of her brother, Robert, she and Richert became equal beneficiaries of a trust that Robert set up before his death (the "Robert Trust"). Richert, acting as Anna's attorney, assisted her in the purchase of a home in Buffalo Grove, Illinois (the "BG house"), and then failed to place the title of the house in Anna's name, instead, naming the title of the house as "Elizabeth Richert, Trustee of the Robert Trust") (Compl. ¶¶ 6, 7). Richert also induced Anna to sign a Receipt and Release, relinquishing her interest in the Robert Trust in exchange for a quitclaim deed to the BG house (Id. ¶ 12). Anna alleges that Richert never recorded the deed, which caused the house to remain in the Robert Trust, to which Anna had given up her rights (Id. ¶ 13).

For her part, Richert alleges that the money for the Anna's purchase of the BG house did not come from the Robert Trust, as Anna contends, but was a loan from Richert, facilitated by Anna's investment advisor and step-grandson, Gary Steciuk ("Steciuk") (Counterclaim ¶1). Richert says that Anna (through Steciuk) has repaid only $31,000.00 of the $200,000.00 loan and

notes that Steciuk was subsequently convicted and jailed for stealing more than $2.6 million in client funds (including money from Anna) (*Id.* ¶¶ 17, 18, 28, 30). Richert contends that Anna filed the underlying lawsuit against her to try to recoup some of the money Anna lost through Steciuk's actions and that her decisions are actually being controlled by Kathleen and Thomas, under the guise of a Power of Attorney document Anna signed (*Id.* at 37).

The counterclaim asserts eight counts: (I) Breach of Loan Agreement (against Anna), (II) Indemnification Based on Receipt and Release (against Anna), (III) Forcible Entry and Detainer (against Anna), (IV) Action to Quiet Title, (V) Slander of Title (against Anna), (VI) Breach of Power of Attorney (against Kathleen), (VII) Defamation (against Anna, Kathleen and Thomas), and (VIII) Abuse of Process (against Anna, Kathleen and Thomas). The general allegations and three counts of the third-party complaint against Kathleen and Thomas are identical to three of the claims pled in the counterclaim: (I) Breach of Power of Attorney (against Kathleen), (II) Defamation (against Kathleen and Thomas), and (III) Abuse of Process (against Kathleen and Thomas).

## II.

We begin with the motion to dismiss the third-party complaint. As an initial matter, we address whether the third-party complaint complies with the requirements of Fed. R. Civ. P. 14, which governs third-party practice. Richert agrees with Kathleen and Thomas that, pursuant to Rule 14(a)(1), a third-party complaint may only be brought against a "nonparty who is or may be liable to the third-party plaintiff for all or part of the claim against it." *Id.* To put the rule into the context of this case, Richert may only bring a third-party complaint against Kathleen and Thomas in the event that the allegations (if proven) would show that Kathleen and Thomas would be derivatively liable if Richert were found liable to Anna. Absent a claim that the third-

3

party defendant is or may be derivatively liable to the third-party plaintiff for claims brought by the original plaintiff, third-party practice under Rule 14 is not allowed, even if the alleged third-party claim grew out of the same transaction as that in the underlying lawsuit. *U.S. Gen., Inc. v. City of Joliet,* 598 F.2d 1050, 1053 (7th Cir.1979), *cited by USA Satellite and Cable v. Mac*, 15 C 6331, 2016 WL 3262002 at *3 (N.D.Ill. June 14, 2016).

Richert appears to concede that her third-party complaint is not appropriate pursuant to Rule 14 (Resp. to Mot. to Dismiss Third-Party Compl. at 2), and we agree. Richert fails to point to any allegations showing that, if Richert were found liable to Anna for breach of fiduciary duty, Kathleen and Thomas then would be derivatively liable to Richert. We therefore dismiss the third-party complaint.

### III.

In seeking to salvage the substance of the third-party complaint, Richert asks that we summarily (1) deem the third-party complaint to be a compulsory or permissive counterclaim under Fed. R. Civ. P. 13, or (2) allow Richert to file another amended counterclaim that joins Kathleen and Thomas as counter-defendants (Resp. to Mot. to Dismiss Third-Party Compl. at 2). Richert offers no legal argument in support of her requests other than to ask the Court to "see also Fed. R. Civ. P. 13(h) (regarding the joining of additional parties and referencing Fed. R. Civ. P. 19 and 20)" (*Id.*). We find this request perplexing, as Richert already has plead as counterclaims against Kathleen and Thomas the same three claims she alleges in the third-party complaint: (1) breach of power of attorney, (2) defamation, and (3) abuse of process. Thus, Richert asks us to convert her third-party complaint into a counterclaim that she has already filed.

4

We decline this exercise in redundancy, particularly since Richert has not shown why Kathleen and Thomas, who did not join in Anna's complaint, should be joined in a counterclaim against Anna. Rule 13(h) allows the joining of additional parties to a counterclaim only if permitted by Rules 19 (mandatory joinder)[2] or 20 (permissive joinder).[3] But Richert offers no argument as to why joining Kathleen and Thomas is required under Rule 19(a), or should be permitted under Rule 20. We will not speculate on what those arguments might be. *Kathleen A. Wagner v. Teva Pharmaceuticals USA, Inc.*, --F.3d--, 2016 WL 6081381 at *3 (7th Cir. 2016) (arguments not developed in any meaningful way are waived). We deny Richert's request and dismiss the third-party complaint for failure to meet the requirements of Fed. R. Civ. P. 13 and 14.

For the same reasons, we also dismiss Kathleen and Thomas as counter-defendants in the first amended counterclaim that is the subject of the other motion to dismiss. Kathleen and Thomas cannot be named counter-defendants because they are not parties to this case, and Richert has not followed the proper procedure to seek to make them parties. *Comtel Technologies, Inc. v. Paul H. Schwendener, Inc.*, 04 C 3879, 2005 WL 433327 (N.D.Ill. February 22, 2005) (proper method to bring a non-party into a claim against plaintiff is to file a counterclaim and move to join non-party through Rules 13(h) and 20).

---

[2] Joinder of a party is mandatory if "in that person's absence, the court cannot accord complete relief among existing parties; or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . impair the person's ability to protect the interest; or leave an existing party subject to a substantial reis of incurring . . . multiple or otherwise inconsistent obligations." Fed. R. Civ. P. 19.

[3] Permissive joinder of defendants is allowed if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20.

We explained above that Richert has given the Court no reason to accept that joinder is appropriate. To the extent that Richert's casual request that we allow Kathleen and Thomas to be named as counter-defendants in the counterclaim should be considered a formal motion brought under Fed. R. Civ. P. 13, 19 and 20, we deny the motion for failure to offer any legal or factual argument in support of it. We thus dismiss Count's VI-VIII of the counterclaim to the extend they seek to allege claims against Kathleen and Thomas.

### IV.

We now turn to Anna's motion to dismiss the first amended counterclaim (except for Count VI, which is not alleged against her). As Richert points out in her response brief, Petitioner does not identify which of the Federal Rules she relies on to support her motion to dismiss save for: (a) Count I, which alleges lack of standing, and (b) Count VII, which she brings pursuant to Fed. R. Civ. P. 12(b)(4) (insufficient process) and (b)(5) (insufficient service of process). Therefore, we will analyze each count under Fed. R. Civ. P. 12(b)(6) to determine if it states a claim upon which relief may be granted, and address any other grounds for dismissal which may reasonably be inferred from the briefs as well.

As we stated in our previous opinion, a motion to dismiss pursuant to Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A Rule 12(b)(6) motion to dismiss a counterclaim is subject to the same standard as a motion to dismiss a complaint. *Northern Trust Co. v. Peters*, 69 F.3d 123, 127 (7th Cir. 1995). We therefore construe all well-pleaded allegations of the counterclaim and the third party complaint in the light most favorable to Richert, *United Central Bank v. Davenport Estate, LLC*, 815 F.3d 315, 317 (7th Cir. 2016), drawing all reasonable

inferences in her favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010).

That said, to survive a motion to dismiss under Rule 12(b)(6), not only must a counterclaim provide fair notice of the claim's basis, but it also must allege enough facts to show that, on its face, the requested claim is plausible, and not just possible. *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). While the counterclaim need not set forth "detailed factual allegations," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court may consider documents attached to the counterclaim without converting the motion into one for summary judgment. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d. 633, 640 (7th Cir. 2015). Respondent has attached to her first amended counterclaim a number of documents: (1) a loan agreement, (2) two letters from Anna's attorney, Christopher Saternus, (3) plaintiff's answers to interrogatories, (4) notices related to the granting of power of attorney for property, (5) a "demand for possession" of the BG house, (6) a *lis pendens* notice filed by Anna, and (7) plaintiff's answers to requests for admissions. Thus, we consider those documents insofar as they are relevant to our consideration of the motion.

A.

Count I of the counterclaim alleges that Anna has breached a loan agreement (or promissory note) by failing to pay the balance due. Anna argues that the loan agreement for the purchase of the BG house was made in the name of Richert as Trustee of the Robert Trust, not Richert as an individual, and that Richert thus lacks standing to bring a counterclaim for breach of the agreement.[4] In response, Richert argues that the counterclaim plainly alleges that the

---

[4] Anna's argument about standing suggests that she relies on Fed. R. Civ. P. 12(b)(1) – dismissal for lack of subject matter jurisdiction – as the basis for dismissing count one. However, in her reply brief, she cites to a case

making of the loan agreement by Steciuk in the name of Richert as Trustee, and not individually, was an error. The counterclaim describes the chain of events that Richert alleges resulted in Steciuk creating the loan agreement, the failed attempts Richert made to correct the wording of the loan agreement, and her ultimate decision not to seek correction of the loan agreement and to instead rely on promises by her family members Anna and Steciuk that the loan would soon be repaid. Richert argues that, accepting these allegations as true, she has standing to bring this count individually.

Anna contends that Richert's counterclaim creates a conflict with the language of the loan agreement. She argues that when the allegations of a complaint are contradicted by a document attached to the complaint, a court is relieved of its duty to accept as true the allegations in the complaint, and may dismiss the claim instead (doc. # 82: Reply at 2, *citing Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir. 1974)). In the Seventh Circuit, this rule has been interpreted to mean that on a motion to dismiss for failure to state a claim, to the extent that the terms of an attached document conflict with the allegations in the complaint, the attached document controls. *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013).

But the *Bogie* court goes on to explain that reliance on an attached document over a contradicting complaint allegation is not absolute, describing an example where a complaint alleges that the plaintiff's signature on an attached contract was obtained by fraud or coercion. *Id.* In such a case, a plaintiff relying on the contradicting statement must explain her position as to why the court should accept her statements over the document. *Id.*

And explain her position is exactly what Richert does when she describes the reasons for the conflict between the attached document and the counterclaim. The well-pleaded allegations

---

concerning dismissals under Rule 12(b)(6). We must accept as true the well-pleaded allegations of the complaint in a motion to dismiss pursuant to Rule 12(b)(1) the same as with 12(b)(6). *Lewert v. P.F. Chang's China Bistro, Inc.,* 819 F.3d 963, 965 (7th Cir. 2016). Therefore, our analysis with respect to both standards is the same.

8

in the counterclaim state that the making of the loan agreement in the name of Richert as trustee, instead of individually, was an error. If we accept as true this allegation – that the loan agreement was meant to be made in the name of Richert individually – then the conflict disappears. If the loan agreement should properly be in Richert's name individually, then she does have standing to sue for breach of the agreement. *Law Offices of Colleen M. Mc Laughlin,* 963 N.E.2d 968, 975 (Ill. App. Ct. 2011) (only named parties to a contract or those who are intended beneficiaries of the contract have standing to sue for breach of that contract). We express no view on whether Richert can prove what she has alleged; but, contrary to Anna's argument, we may not disregard those allegations on a motion to dismiss. Therefore, we deny the motion to dismiss Count I of the counterclaim.

**B.**

In Count II of the counterclaim, Richert seeks indemnification for her attorney's fees and costs incurred in defending this case, based on a provision of a Receipt and Release dated July 30, 2011, which is attached to Anna's complaint. Anna contends that the point of the indemnity language in the Receipt and Release was to indemnify Richert only for claims brought by third parties. It was not intended, says Anna, to indemnify Richert for her costs and fees accrued in a lawsuit brought by Anna herself (Motion to Dismiss at 3).

Richert responds that the Receipt and Release squarely defines the situations under which Anna may be required to indemnify Richert. The language at issue states that "[Anna] does hereby indemnify and hold harmless the Personal Representative and Trustee, Elizabeth K. Richert, individually and as such Personal Representative and Trustee, of and from any and all liabilities, damages, losses, charges, fees, costs, and expenses of whatever kind or nature (including reasonable attorney fees) which the Personal Representative and Trustee shall at any

9

time sustain or incur by reason of any objection, demand, or claim or whatever kind or nature for, upon, or by reason of, the distribution of the Property to [Anna] in full payment and satisfaction of the Bequest."

In Illinois, interpretation of a contract's terms is generally a question of law. *Fifth Third Mortgage Company v. Kaufman*, No. 12 C 4693, 2016 WL 2851554, *5 (N.D. Ill. May 14, 2016). If there is any ambiguity in the contract, however, proper resolution of that ambiguity becomes a question to be resolved by the trier of fact, and cannot be decided on a motion to dismiss. *Bank of America, N.A. v. Oberman, Tivoli & Pickert, Inc.*, 12 F.Supp.3d 1092, 1100 (N.D. Ill. 2014). We apply that rule with special rigor in a fee-shifting provision, as Illinois law does not provide for fee shifting absent statute or a contractual agreement to do so. *United Labs., Inc. v. Savaiano*, 06 C 1442, 2007 WL 4557095 (N.D. Ill. December 21, 2007).

In this case, the language of the indemnity agreement is ambiguous; we cannot determine whether it was intended to indemnify Richert for claims against her that were allegedly caused by her own behavior. It will be for Richert to ultimately offer evidence to show that both parties intended that result.

In refusing to dismiss the indemnity claim, we do not suggest that even if Richert offers such evidence, that inexorably will lead to the enforcement of the indemnity provision. The Seventh Circuit has recognized that under Illinois law, "an agreement to indemnify against willful misconduct would, as a general rule, be contrary to public policy and unenforceable though there were no statute to that effect." *Chicago Housing Auth., Federal Security, Inc.*, 161 F.3d 485, 488 (7th Cir. 1998). Anna alleges that Richert breached her fiduciary duty, which under Illinois law is an intentional tort. *Appley v. West*, 929 F.2d 1176, 1180 (7th Cir. 1991).

10

There are exceptions to the general rule, "but not where it compensates the wrongdoer." *Illinois Farmers Ins. Co. v. Keyser,* 956 N.E.2d 575, 579 (Ill. App. 2011).

It is premature for the Court to decide now whether the indemnity in the Receipt and Release was intended to cover fees and expenses incurred by Richert as a result of the suit by Anna, or if so, whether that kind of indemnity would be enforceable. We therefore deny the motion to dismiss Count II of the counterclaim.

### C.

Count III of the counterclaim contends that Richert served a "Demand for Possession" on Anna (during the pendency of this litigation), that Richert is entitled to possession of the BG house, and that Anna is unlawfully withholding possession of the BG house. Nothing in this count or in the background allegations of the counterclaim (¶¶ 1-33) suggests the legal or factual basis for Richert's contention that she is entitled to unfettered possession of the property.

Anna first argues that Richert's action for forcible entry and detainer should be dismissed because Richert does not have standing to bring the claim as an individual, since the property at issue – the BG house – is titled in her name as trustee of the Robert Trust. We reject this argument for the same reason we did in response to the motion to dismiss Count I.

Anna also argues that Richert has failed to properly plead a claim for forcible entry and detainer. We agree. Even accepting as true all of Richert's allegations in the counterclaim, we cannot fit the facts into the legal framework of a forcible entry and detainer action.

An action for forcible entry and detainer is a legal process for settling disputes about real property. *Chicago Transit Authority v. Clear Channel Outdoor, Inc.,* 851 N.E.2d 171, 179 (Ill. App. Ct. 2006). The purpose of the Illinois Forcible Entry and Detainer Act ("the Act"), 735 ILCS 5/9-101 *et. seq.* is to "provide a speedy remedy to allow a person who is entitled to the

possession of a certain real property to be restored to possession." *Wells Fargo Bank, N.A., v. Watson,* 972 N.E.2d 1234, 1237 (Ill. App. Ct. 2012). Because an action for forcible entry and detainer is summary in nature, those matters that are not germane to the question of possession may not be raised. *Id.* The "germane matters" to the right of possession generally fall into one of four categories: (1) claims asserting a paramount right of possession; (2) claims denying breach of the agreement vesting possession in the plaintiff; (3) claims challenging the validity or enforceability of the agreement on which the plaintiff bases the right to possession; and (4) claims questioning the plaintiff's motivation for bringing the action. *Id., citing People ex. rel. Department of Transportation v. Walliser,* 629 N.E.2d 1189, 1194 (Ill. Ct. App. 1994). Serious title disputes are not appropriately brought in an action for forcible entry and detainer. *Wells Fargo Bank,* 972 N.E.2d at 1238, *citing Avenaim v. Lubecke,* 807 N.E.2d 1068, 1074 (Ill. Ct. of App. 2004).

Richert's bare bones allegations in Count III fail to put Anna on notice as to the basis for her claim. Although she makes a claim for "forcible entry and detainer," neither Richert's counterclaim nor her demand for possession identify which, if any, statutory sections of the Act, allegedly apply to her case; and they fail to describe which of the above "germane matters" are at issue or relevant to determining the ultimate question of possession of the BG house.[5] It is not even clear what document(s) Richert relies on to support her claim for possession: is it the loan agreement (which says nothing about Richert taking possession if the loan was not paid); or is it the Receipt and Release (which, on its face, does not address circumstances under which Richert could take possession, or even mention the BG house); or some other unspecified document.

---

[5] Although she does not explain how the Act applies to her situation, Richert specifically denies that her dispute over ownership of the BG house involves either a lease or a mortgage foreclosure, two situations for which Illinois law provides specific duties and responsibilities for the party seeking possession of a property. 735 ILCS 5/9-209 (lease), 735 ILCS 5/15-1701(h)(4) (mortgage) (Response at 5-6).

Richert's allegations fail to satisfy the notice requirement of *Twombly* and *Iqbal;* they also fail to assert a plausible claim for forcible entry and detainer. Therefore, we dismiss Count III of the counterclaim for failure to state a claim for relief.

**D.**

In Count IV of the counterclaim, Richert contends that the *lis pendens* Anna recorded against the BG house has created a cloud on Richert's title to the property. She seeks a declaration that the title to the BG house is vested in "Elizabeth K. Richert, as Trustee of the Robert L. Richert Trust." Richert does not explain why in this count she asks the BG house be declared titled to her capacity as Trustee of the Robert Trust, when she contends elsewhere in her counterclaim and brief that the loan agreement was erroneous, and that she "never agreed that title to the Buffalo Grove property would be in her name as Trustee of the Robert Richert Trust" (Resp. to Mot. to Dismiss at 3).

In her motion to dismiss this count, Anna argues that the *lis pendens* has no legal force and effect other than to put third parties on notice about the title dispute and that it will be lifted after the resolution of the case. In response, Richert contends only that the *lis pendens* affects the transferability of the property and that she is entitled to seek a declaration as to her ownership rights in the BG house *vis a vis* Anna's rights.

An action to quiet title is a legal proceeding in which "a party seeks to remove a cloud on his title to [a piece of] property." *Cocroft v. HSBC Bank USA, N.A.,* 796 F.3d 680, 689 (7th Cir. 2015). As Anna states in her motion, her original lawsuit is an action to quiet title in the BG house, and so to the extent that Richert is also asking the Court to determine proper title in that

13

property, her request is superfluous.[6] Moreover, existence of the *lis pendens* does not create a lien or act as an injunction preventing sale of a property; it is simply a legal mechanism for giving notice of the title dispute to third parties. *Sobilov. Manassa*, 479 F.Supp.2d 805, 824 (N.D. Ill. 2007).

Not only is Count IV duplicative of Anna's request that the Court resolve the question of ownership in the BG house, but it fails to state a claim for which relief may be granted. In this count, Richert asks that title be placed in her name as trustee of the Robert Trust, while elsewhere in the counterclaim she contends that the BG House is improperly titled in her name as trustee, and should properly be placed in her name individually. Richert does not explain the reason for the contradiction and therefore, we find that this count does not provide Anna with fair notice of the basis for the claim. On both grounds, we dismiss Count IV.

### E.

Richert contends that, by recording the *lis pendens*, Anna has slandered Richert's title to the BG house. She alleges that Anna acted with malice, and for the express purpose of preventing Richert from selling or otherwise disposing of the property. In Illinois, "the act of maliciously recording a document which clouds another's title to real estate is actionable as slander of title." *In re Snyder*, 542 B.R. 429, 435 (Bankr. N.D. Ill. 2015). The elements of slander of title in Illinois are: (1) a false and malicious publication by defendant, (2) that disparages plaintiff's title to the property, (3) and damages resulting from that publication. *American Nat. Bank and Trust Co. v. Bentley Builders, Inc.*, 719 N.E.2d 360, 364 (Ill. Ct. App. 1999). Malice must be shown by evidence that the defendant knew the disparaging statements were false or that the defendant made the statements in reckless disregard of their falsity. *Pecora*

---

[6] We recognize that Richert's counterclaim asks the Court to quiet title in her favor, while Anna's complaint asks that we order the deed to the house be placed in her name. But the ultimate ruling on Anna's claim will resolve the issue of Richert's rights in the BG house (individually and as Trustee) vis-à-vis Anna.

14

*v. Szabo*, 418 N.E.2d 431 (1981). A falsely recorded *lis pendens* notice may be the basis for an action for slander of title. *Greer Properties, Inc. v. La Salle Nat. Bank*, No. 87 C 10983, 1989 WL 135223 at *2 (N.D. Ill. October 26, 2003).

Anna seeks dismissal of this claim on two grounds, but we need only address one, as we find it dispositive: privilege. In Illinois, statements made in a *lis pendens* notice are entitled to absolute privilege against allegations of defamation (or falsity) where the underlying complaint makes allegations affecting an ownership interest in the subject property. *Kurtz v. Hubbard*, 973 N.E. 924, 929 (Ill. Ct. App. 2012). As the parties recognized with respect to Richert's Count IV claim to quiet title, the *lis pendens* merely put third parties on notice of the underlying lawsuit, an action to quiet title in the BG house. Richert's bare bones allegation that Anna's recording of the *lis pendens* notice prevents her from selling the house does not allege that the filing of the *lis pendens* itself was false, and is not sufficient to state a claim for relief for slander of title. Therefore, we will dismiss Count V of the counterclaim.

### F.

Richert's claim for defamation stems from three comments made in pleadings and filings in this case: (1) in Plaintiff's Response to Defendant's Motion to Change of Venue, the statement that, at a birthday celebration for Anna, Kathleen and Thomas had "no knowledge of what was transpiring – of what their cousin [Richert] was doing to their mother . . . (taking away her home and her right to her brother's inheritance)" (doc. # 43, ¶ 9); (2) in Plaintiff's Response to Defendant's Motion for Change of Venue, the characterization of Richert's actions against Anna as "fleecing" Anna with the help of Steciuk (*Id.,* ¶ 14); and (3) in Plaintiff's Answers to First Set of Interrogatories, the statement that Kathleen is a person with knowledge that Richert "stole the home from [Anna]" (Counterclaim, Exh. D, ¶ 3). Richert contends that under Illinois law, these

statements constitute defamation *per se* because they impute the commission of a crime; they impute an inability to perform or want of integrity in the discharge of duties of office or employment; and/or they prejudice Richert, or impute a lack of ability in her trade, profession, or business. (Resp. to Mot. to Dismiss at 8, *citing Bryson v. News America Publications, Inc.,* 672 N.E.2d 1207, 1214-15 (Ill. 1996)).

We dismiss Richert's claim for defamation because statements made during the course of a judicial proceeding are absolutely privileged as long as they are sufficiently related to that proceeding. *Malevitis v. Friedman,* 753 N.E.2d 404, 405 (Ill. Ct. App. 2001). Richert concedes that the statements at issue were made as part of the underlying judicial proceeding, but she argues that they are completely unrelated to Anna's claim for breach of fiduciary duty, and amount to nothing more an attempt to gratuitously smear her (Resp. to Mot. to Dismiss at 9, *citing MacGregor v. Rutberg,* 478 F.3d 790, 791-92 (7th Cir. 2007) (giving as an example of defamatory statements that are "unarguably irrelevant" to the underlying case a witness in an antitrust case who blurts out: "And by the way, my ex-husband is a murderer, a thief, a deadbeat, and a purveyor of child pornography").

We disagree that the three statements at issue are "unarguably irrelevant" to the underlying lawsuit. The underlying lawsuit accuses Richert of a breach of her fiduciary duty towards Anna, a breach brought about, in part, by Richert's alleged wrongdoing in convincing Anna to sign documents; refusing to provide her with a recordable deed and, instead, keeping the BG house in the Robert Trust; and then inducing Anna to relinquish her interest in that trust while failing to provide her with important information about it. When Anna characterizes Richert's actions as stealing or takings, this specifically refers to alleged activities that form the basis for the complaint. This is a completely different scenario than the one described in

16

*MacGregor,* in which the blurted statements were wholly unrelated to the underlying action. We are satisfied that the absolute privilege protects the statements from a claim of defamation and therefore, we dismiss Count VII of the counterclaim.

G.

Richert's claim in Count VIII of the counterclaim for abuse of process stems from her contention that Kathleen and Thomas are the true petitioners in this matter, that they have controlled the case on behalf of Anna from the beginning, and have used their positions as Power of Attorney and Successor Power of Attorney to cause Anna to file a lawsuit filled with false allegations about Richert. She further contends that Anna (controlled by Kathleen and Thomas), filed the lawsuit "without a genuine legal basis for doing so, and for the ulterior motive or purpose of continuing [Anna's] rent free, physical possession of the Buffalo Grove property while attempting to secure title to same without paying for it, and in order for [Kathleen and Thomas] to obtain information with respect to the Trust, knowing that [Anna] nor they were entitled to it" (Counterclaim, ¶¶ 78, 79).

For the reasons explained above, we already have dismissed this claim against Kathleen and Thomas. We now dismiss the claim against Anna. The elements of abuse of process in Illinois are: (1) the existence of an ulterior motive or purpose; and (2) some action in the use of legal process not proper in the regular prosecution of the proceedings." *Slep?Tone Entertainment Corp. v. Elwood Enterprises, Inc.,* 165 F.Supp.3d 705, 714 (N.D.Ill. 2015). The first element requires a showing of an improper purpose for the lawsuit, such as "extortion, intimidation or embarrassment." *Id.* The second element requires a showing that the legal process was used to force the opposing party to do something it could not otherwise be legally compelled to do. *Kumar v. Bornstein,* 820 N.E.2d 1167, 1173 (Ill. 2004). Without the existence of both of these

elements, the act of filing a lawsuit, even with malicious intent, does not constitute abuse of process. *Slep?Tone,* 165 F.Supp.3d at 714.

The bulk of Richert's allegations regarding abuse of process accuse Kathleen and Thomas of misusing the Power of Attorney to induce Anna to file the underlying lawsuit, and of making false allegations about Richert in that lawsuit. Taking these allegations as true for the purpose of this motion, Richert describes nothing more than her disagreement with the merits of the action; *i.e.,* her belief that Anna should not have filed her complaint to quiet title because she is not legally entitled to the BG house. What Richert describes as the "underlying motive" for the lawsuit – Anna's attempt to obtain title to the BG house free and clear of encumbrances – is actually the primary motive of the lawsuit, and a proper one.[7] We understand that Richert brands Anna's allegations as false. But, if that was enough to form the springboard to an abuse of process claim, that would lead to a proliferation of those kinds of abuse of process claims in derogation of the disfavored status of these kinds of claims under Illinois law. *Forza Technologies, LLC v. Premier Research Labs, LP* No. 1-14-2640, 2015 IL App (1st) 142640 at *4 (Ill. Ct. App. October 27, 2015) Therefore, we dismiss Count VIII.

---

[7] We also find that Richert's allegation that an underlying motive of the lawsuit was to give Kathleen and Thomas access to information about the Robert Trust does not support an abuse of process claim. Not only are Kathleen and Thomas not parties to this case, but in her complaint, Anna herself requests information about the Robert Trust that she allegedly had a right to see, and contends that she has never seen or been given despite her demands.

18

## CONCLUSION

For the reasons stated above, we dismiss the third-party complaint with prejudice. We decline to find that Kathleen and Thomas are proper parties to the counterclaim and therefore dismiss counterclaim Count VI of the counterclaim against Kathleen and Counts VII and VIII of the counterclaim against Kathleen and Thomas. We grant Anna's motion to dismiss Counts III, IV, V, VII and VIII of the counterclaim for failure to state a claim for which relief may be granted. We deny Anna's motion to dismiss Counts I and II of the counterclaim. Anna's answer to those counts of the counterclaim is due November 10, 2016.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: October 21, 2016**