UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ANNA M. WHITE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 15 C 8185 |
| | ) | |
| v. | ) | Magistrate Judge Sidney Schenkier |
| | ) | |
| ELIZABETH K. RICHERT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

On July 17, 2015, plaintiff Anna M. White, at 91 years old, filed a petition in the Circuit Court of Lake County, Illinois, against her niece, defendant Elizabeth K. Richert, to obtain legal title to Ms. White's residence in Buffalo Grove, Illinois (the "BG property") and an accounting of the Robert L. Richert Trust (the "Robert Trust"), for which Ms. Richert served as Trustee (doc. # 1, Ex. A: Petition). Ms. Richert removed the case to federal court based on diversity jurisdiction (doc. # 1: Notice of Removal). After a failed attempt at settlement, the gloves came off, and the parties have battled each other at each step of this litigation.[2]

Ms. Richert filed motions to dismiss Ms. White's Petition for improper venue and for failure to state a claim, which this Court denied in a written opinion. *White v. Richert*, No. 15 C 8185, 2016 WL 3582083, at *1 (N.D. Ill. June 28, 2016) ("*White I*"). Ms. Richert then filed third-party complaints against Ms. White's children, Kathleen Murphy and Thomas White, but in a written opinion, we granted Ms. Murphy's and Mr. White's motions to dismiss the third-party

---

[1]On November 30, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 26).

[2]Ms. Richert again sought to have a settlement conference in late 2016, but after setting a date, we struck the conference until "both sides evince a willingness to engage in settlement negotiations in the future" (doc. # 113). The parties have not yet evinced such a willingness.

complaints against them. *White v. Richert*, No. 15 C 8185, 2016 WL 6139929, at *9 (N.D. Ill. Oct. 21, 2016) ("*White II*"). Ms. Richert also filed eight counterclaims against Ms. White, but we dismissed all but the counterclaims for breach of a loan agreement and indemnification. *Id.*

Discovery then began, but that too was plagued with numerous disputes, as reflected by: (a) multiple motions to compel discovery filed by Ms. White (docs. ## 63, 108, 146, 156, 174); (b) two motions to quash discovery filed by Ms. Richert (docs. ## 95, 121); and (c) motions for sanctions filed by both Ms. White (doc. # 128) and Ms. Richert (doc. # 143). The Court granted Ms. White's motion for leave to file an Amended Complaint (doc. # 165) over Ms. Richert's objections, which Ms. White filed on August 11, 2017 (doc. # 173: Am. Compl., ¶ 22). Ms. Richert then filed a motion to dismiss Ms. White's Amended Complaint, which this Court denied (doc. # 177). Ms. Richert appealed our order denying her motion to dismiss, but the Seventh Circuit denied the appeal because "[t]he district court has not issued a Rule 58 judgment in the present case, and for good reason. Plaintiff's case remains pending in the district court" (doc. # 199). The parties have now completed both fact and expert discovery, and despite the reservations we expressed that either party could meet summary judgment standards, Ms. Richert has moved for summary judgment (doc. # 205). This motion is now fully briefed. For the reasons set forth below, the Court grants in part and denies in part Ms. Richert's motion.

I.

The legal standards governing motions for summary judgment are well-established. Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the facts and draw reasonable inferences in the light most favorable to the nonmovant, "'avoiding the temptation to decide which party's version of the facts is more likely true.'" *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). "We must resist the trap of assessing the credibility of witnesses, choosing between competing inferences or balancing the relative weight of conflicting evidence." *Khan v. Midwestern Univ.*, 879 F.3d 838, 840 (7th Cir. 2018). "'[S]ummary judgment cannot be used to resolve swearing contests between litigants.'" *Johnson*, 892 F.3d at 893 (quoting *Payne*, 337 F.3d at 770).

"[T]he non-movant must 'go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor.'" *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014) (quoting *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013)). "'Provided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial—self-serving' testimony is an acceptable method for a nonmoving party to present evidence of disputed material facts." *Johnson*, 892 F.3d at 901 (quoting *Payne*, 337 F.3d at 773).

Ms. Richert filed a statement of facts in support of her motion for summary judgment (doc. # 207: Richert SOF), and Ms. White filed a response to this statement of facts, which included her own statement of additional facts (doc. # 209: White SOF). Ms. Richert then filed a "reply" to Ms. White's response, which included a cursory response to Ms. White's statement of

3

additional facts (doc. # 211: Richert Reply to SOF). The parties' responses to each other's asserted facts do not comport with Local Rule 56.1, as they are rife with legal arguments and additional factual allegations. Moreover, the Local Rules do not give the moving party a right to file a "reply" in support of their initially asserted statement of facts.

Nevertheless, rather than strike large portions of both parties' submissions, we have reviewed the numerous exhibits the parties attached to support of their fact statements, which include trust and estate documents, loan documents, deposition testimony, affidavits, and responses to discovery, and we have considered the materials to the extent they would be "admissible in evidence or point to evidence that would be admissible at trial." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018); *see also* Fed. R. Civ. P. 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). Based on these materials, we set forth the undisputed facts below, indicating the outstanding conflicts between the parties where appropriate. *See Gray v. Hardy*, 826 F.3d 1000, 1004-05 (7th Cir. 2016) (holding that while district courts have discretion to insist on strict compliance with the local rules, they are also "entitled to . . . [take] a more flexible approach").

## II.

In June 2008, Robert Richert (Ms. White's brother and Ms. Richert's uncle) executed the Robert Trust and put the title to his Arizona residence into the trust (White SOF, Ex. 15). Discovery in the case revealed three versions of the Robert Trust, which for ease of reference we will call versions A, B and C (Am. Compl., Ex. A: Robert Trust Version A; Am. Compl., Ex. B: Robert Trust Version B; Am. Compl., Ex. C: Robert Trust Version C). Versions A and B are

identical, except Version B contains photocopies of post-it notes. Version C is identical to Version A except for Paragraph 5.4.1.

In Versions A and B, Paragraph 5.4.1 of the Robert Trust states that upon Mr. Richert's death, the Trustee shall distribute the trust estate, as well as his Arizona residence, as follows:

> If the Settlor's residence is part of the trust estate or is owned by the Settlor at the time of his death, then the Settlor's residence, personal effects, household goods, automobile(s), and any interest he may have in any insurance policies thereon, shall be distributed to Elizabeth K. Richert, the Settlor's niece. If at the time of the Settlor's death, the Settlor's residence is not part of the trust estate or is not owned by the Settlor, then forty-seven percent (47%) of the trust estate shall be distributed to Elizabeth K. Richert, the Settlor's niece.

(Robert Trust Versions A and B, ¶ 5.4.1). By contrast, in Version C of the Robert Trust, Paragraph 5.4.1 states that:

> If the Settlor's residence is part of the trust estate or is owned by the Settlor at the time of his death, then the Settlor's residence, personal effects, household goods, automobile(s), and any interest he may have in any insurance policies thereon, shall be distributed to Elizabeth K. Richert, the Settlor's niece. In addition to the Settlor's residence, forty-seven percent (47%) of the trust estate shall be distributed to Elizabeth K. Richert, the Settlor's niece.

(Robert Trust Version C, ¶ 5.4.1). Each version of the Robert Trust provided that "[f]orty-seven percent (47%) of the trust estate shall be distributed to Anna Marie White, the Settlor's sister, if she survives the Settlor" (Robert Trust Versions A, B, and C, ¶ 5.4.2), and that six percent of the trust would be donated to various public and private entities (*Id.*, ¶ 5.4.3).

Each version of the Robert Trust also named Ms. Richert trustee of the Robert Trust and executor of his will in the event of Mr. Richert's death (Robert Trust Versions A, B, and C, ¶ 7.7). Mr. Richert died on November 9, 2009 (White SOF, Ex. 16: Death Cert.), making Ms. Richert executor of his will and trustee of the Robert Trust. There is no dispute that at the time of Mr. Richert's death, his residence was part of the Robert Trust (White SOF, Ex. 15: Warranty Deed; Richert Mem. at 9-10).

On November 10, 2010, Ms. White and her late husband James closed on the purchase of the BG property (Richert Reply to SOF, Ex. 14: 02/04/2014 Affidavit of Gary Steciuk). Two days earlier, a "Loan Agreement" was purportedly entered into between Ms. White and Ms. Richert, which states in relevant part that:

> Elizabeth K. Richert will be loaning funds in the sum of $200,000.00 from the Robert L. Richert Trust, Elizabeth K. Richert, Trustee, to Anna M. White for the purpose of purchasing an investment property at 49 Willow Parkway, Buffalo Grove, IL 60089. The property will be titled in the name of the Trust and Elizabeth K. Richert, Trustee, until the loan is repaid in full. At the time the loan is repaid, the title to the property will be transferred to Anna M. White.
>
> . . .
>
> As soon as the property at 1322 S. New Wilke Rd., in the names of Anna M. White and James F. White, is sold, the entire proceeds will be sent to Elizabeth K. Richert to repay a portion of the loan.[3] The intent is that the remainder of the loan will be repaid upon distribution of the estate attached to Robert L. Richert.
>
> However, Elizabeth K. Richert reserves the right to call the balance of the loan at any time, if necessary, and in such case funds will be liquidated by Gary C. Steciuk, Investment Representative, from Anna M. White's investments in order to repay the balance.

(Richert SOF, Ex. 10: Loan Agreement). Only Ms. White signed the agreement.

Ms. Richert asserts that she "paid $200,000 to purchase the 'Buffalo Grove property,'" but that -- contrary to the terms of the Loan Agreement -- Ms. White had agreed to have the BG property titled to Ms. Richert "individually," and not in her capacity as trustee of the Robert Trust (Richert Reply to SOF, Ex. 17: Richert Amended Affidavit ("Richert Aff."), ¶¶ 14-15). However, on November 10, 2010, a deed to the BG property was recorded in the name of Elizabeth Richert, as trustee of the Robert Trust (White SOF, Ex. 12: Exhibits to Dep. of Gary Steciuk, Warranty Deed). The Whites sold their Arlington Heights property on April 8, 2011;

---

[3]Prior to purchasing the BG property, Mr. and Mrs. White had resided in a home on New Wilke Road in Arlington Heights, Illinois.

6

Ms. White did not pay any proceeds from that sale to Ms. Richert or the Robert Trust (White SOF, ¶¶ 48-50).

On July 30, 2011, while Ms. Richert and her son were staying with Ms. White and her husband at the BG property, Ms. Richert presented Ms. White with a "Receipt and Release," which Ms. Richert states she prepared as trustee of the Robert Trust (Richert Aff. ¶¶ 5, 26-27). The Receipt and Release, which Ms. White signed, states that Ms. White "acknowledge[d] receipt from Elizabeth K. Richert, as Personal Representative and Trustee of the Estate of Robert Louis Richert, deceased, of the Property she is entitled to receive under" Mr. Richert's will and the Robert Trust, "in full payment and satisfaction of the bequest(s) to her" (Richert SOF, Ex. 8: Receipt and Release). Further, the Receipt and Release states that "in consideration thereof," Ms. White agreed to "[r]emise, release and forever discharge the Personal Representative and Trustee, Elizabeth K. Richert, individually and as such Personal Representative and Trustee, of and from any and every claim, demand, action . . . arising from or in any manner relating to, or connected with, the distribution of the Property to the undersigned in full payment and satisfaction of the Bequest" (*Id.*).

That same day, July 30, 2011, Ms. Richert handwrote a Quitclaim Deed (Richert Aff., ¶¶ 26-27), which states that Elizabeth K. Richert, as trustee of the Robert Trust, quitclaimed and transferred all right, title and interest she held in the BG property to Ms. White (Steciuk Dep. Exs.: Quitclaim Deed). The Quitclaim Deed was signed by Elizabeth Richert, Grantor, as trustee of the Robert Trust, and witnessed by her son, Yonnar Richert, and Gary Steciuk, Ms. White's step-grandson and former investment advisor (*Id.*). Ms. Richert has never recorded or given Ms. White the Quitclaim Deed (Richert Aff., ¶¶ 27-28).

7

Ms. Richert asserts that she has "never acted as Anna M. White's attorney in the State of Illinois, or otherwise," and that she has never been licensed to practice law in Illinois (Richert Aff., ¶¶ 3-4). However, Mr. Steciuk attested that on or about January 23, 2012, he received a fax or email from Ms. Richert containing a will and trust for Anna White and one for James White (White SOF, Ex. 7: 11/09/2015 Affidavit of Gary Steciuk, ¶ 5). Mr. Steciuk had them sign the documents in front of a notary, and then he sent the signed original documents back to Ms. Richert (*Id.*). A January 22, 2012 version of Ms. White's last will and testament was signed by Ms. White and witnessed by Mr. Steciuk and two others (Steciuk Dep. Exhs: 01/22/2012 last will and testament of Anna White).[4]

### III.

Ms. White's Amended Complaint contains two counts: the claim contained in her initial Petition, which Ms. White incorporated by reference into her Amended Complaint, and a second claim for "liability as a trustee" (Am. Compl.). Ms. Richert contends that Ms. White's claims are time-barred (doc. # 206: Richert Mem. in Supp. of Summ. J. at 3). She argues that Arizona Revised Statutes ("A.R.S.") § 14-11005(c), which limits actions by a trust beneficiary against a trustee to two years after the beneficiary's interest in the trust was terminated, applies to bar Ms. White's action under the terms of the Robert Trust, which states: "[t]his Agreement shall be construed under and regulated by the laws of the State of Arizona . . ." (Richert Mem. at 3-4, citing Robert Trust, ¶ 8.6). Alternatively, Ms. Richert argues that Illinois law, 735 ILCS 5/13-214.3, bars Ms. White's suit.

---

[4]Ms. Richert points out that on December 18, 2014, Mr. Steciuk pleaded guilty to mail fraud, including embezzling from Ms. White and her late husband (Richert Mem. at 2; Steciuk Dep. Exs.: Steciuk Plea Agreement, at 12). While that fact may be relevant in assessing Mr. Steciuk's credibility if his testimony is offered at trial, we do not assess credibility claims on summary judgment and so this evidence is irrelevant to our consideration of Ms. Richert's motion.

Ms. White did not respond to Ms. Richert's statute of limitations argument in her brief opposing summary judgment. Nonetheless, as the movant, it is Ms. Richert's burden to show that, as a matter of law, the material undisputed facts entitle her to summary judgment on her statute of limitations affirmative defense. *See, e.g., Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (noting that it was defendants' burden to prove their affirmative defense and to show that they were entitled to summary judgment on that basis). Thus, despite Ms. White's curious failure to address this issue, we must consider whether Ms. Richert has met her burden. We find that she has done so as to the claim in the original Petition, but not as to the claim added in the Amended Complaint.

### A.

Although the Robert Trust states that Arizona law applies, "issues regarding limitations on actions, such as statutes of limitations, are procedural, and procedural issues are governed by the law of the forum state regardless of the parties' contractual choice-of-law provisions." *State Farm Mut. Auto. Ins. Co. v. Burke*, 51 N.E.3d 1082, 1099 (Ill. App. 2016) (citing *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002)). In addition, Illinois courts have adopted the "strong presumption that the forum state will apply its own statute of limitations." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) (citing *Belleville*, 770 N.E. 2d at 194). Accordingly, Illinois law governs the timeliness of Ms. White's claims.

That said, different statutes of limitations apply to Ms. White's two claims against Ms. Richert. We therefore consider in turn the statute of limitations that applies to the claim in the Petition and to the claim in the Amended Complaint.

**B.**

In the claim set forth in Ms. White's Petition, she alleges that Ms. Richert breached her "duty of honesty and loyalty" in her role as Ms. White's attorney by inducing Ms. White to sign the Receipt and Release without a proper accounting of the Robert Trust and by failing to provide Ms. White the Quitclaim Deed (Petition, ¶¶ 19-20). As a remedy, Ms. White seeks legal title to the BG property, dissolution of the Receipt and Release, and an accounting of the Robert Trust (*Id.* at 4).

Illinois law 735 ILCS 5/13-214.3 states that for "[a]n action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services . . . must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b). The "arising out of" language "encompasses a number of potential causes of action in addition to legal malpractice." *Evanston Ins. Co. v. Riseborough*, 5 N.E.3d 158, 166 (Ill. 2014). Under the Illinois Supreme Court's broad reading of Section 5/13-214.3(b), the two-year statute of limitations applies to Ms. White's claim against Ms. Richert for breach of fiduciary duty in her capacity as Ms. White's attorney.

Ms. White affirmatively pleaded that she discovered a problem with title to the BG property in February 2013 (Petition, ¶ 8). That discovery triggered the running of the statute of limitations, as by no later than that date, Ms. White "knew or reasonably should have known" that Ms. Richert allegedly violated her rights. 735 ILCS 5/13-214.3(b)(i); *see also Federated Indus., Inc. v. Reisin*, 927 N.E.2d 1253, 1260 (Ill. App. 2010) ("The mere fact that the extent of injury is not immediately known or ascertainable does not postpone the triggering of the statute of limitations") (internal citations and quotations omitted). However, Ms. White did not file her

Petition until July 17, 2015, more than two years later. Thus, her claim against Ms. Richert in the Petition, which is based on Ms. Richert's role as her attorney, is time-barred.

## C.

Our analysis is different with respect to Ms. White's remaining claim against Ms. Richert. In the Amended Complaint, Ms. White alleges that Ms. Richert breached her fiduciary duty as trustee of the Robert Trust (and not as an attorney) by creating a "counterfeit" version of the Robert Trust (Version C), which she allegedly "altered and forged" to "aggrandize and unlawfully take 47% of the trust proceeds she was not entitled to" (Am. Compl., ¶¶ 27-28). As a remedy, Ms. White asks this Court to order Ms. Richert to disgorge proceeds of the Robert Trust to which she was not entitled, and to award Ms. White punitive damages (*Id.* at 3).

In Illinois, Section 5/13-205 states that "actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205. This five-year statute of limitations (sometimes referred to as a "catch-all" provision) applies to claims for breach of fiduciary duty not otherwise addressed in a separate statute. *Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 14 (Ill. 2016). Illinois does not provide a specific statute of limitations for claims of breach of fiduciary duty by a trustee, and so the five-year statute of limitations applies to Ms. White's claim here that Ms. Richert breached her fiduciary duty as trustee of the Robert Trust. *See, e.g., Fuller Family Holdings, LLC v. N. Trust Co.*, 863 N.E.2d 743, 756 (Ill. App. 2007) (applying Section 5/13-205 to breach of fiduciary duty claim brought by trust beneficiaries against trustee).

11

Ms. Richert contends that even if a five-year statute of limitations period applies, Ms. White's claim for breach of fiduciary duty against her as trustee is time-barred because Ms. White filed her Amended Complaint on August 11, 2017, more than six years after Ms. White released her interest in the Robert Trust through the Receipt and Release in July 2011 (Richert Mem. at 10). However, we disagree with Ms. Richert's assertion that the date Ms. White signed the Receipt and Release is the date on which her claim for breach of fiduciary duty as trustee accrued.

"[U]nder the discovery rule, which is applicable to breach of fiduciary duty claims, the cause of action accrues and the limitations period commences when the plaintiff knew or reasonably should have known of the injury and that it was wrongfully caused." *Fuller*, 863 N.E.2d at 756. In her Amended Complaint, Ms. White contends that she was injured because Ms. Richert created a counterfeit version of the Robert Trust, Version C, to "aggrandize and unlawfully take 47 percent of trust proceeds to which she was not entitled (Am. Compl., ¶ 29). Ms. Richert offers no evidence that Ms. White had a copy of any version of the Robert Trust at the time she filed her original Petition in July 2015 (*see* Petition, ¶¶ 15-17). To the contrary, Ms. Richert admits that even as of June 2016, when the Court addressed the statute of limitations on her motion to dismiss the Petition, "none of the pertinent trust documents were before the Court and discovery had not yet disclosed the circumstances of the case" (Richert Mem. at 3).

On February 15, 2017, Ms. Richert produced a copy of Version C of the Robert Trust to Ms. White (Am. Compl., ¶ 27; *see also* doc. # 158: 04/19/17 Court Tr. at 14:20-15:1). On March 7, 2017, at her deposition, Ms. Richert testified that she believes she showed Version C of the Robert Trust to Ms. White within one year of Mr. Richert's death (White SOF, Ex. 3: 03/07/17 Deposition of Elizabeth Richert at 128:9-129:3). However, Ms. Richert testified that the original

Version C of the Robert Trust was stolen by unknown persons on some later date (prior to the filing of this lawsuit in July 2015), when boxes of silverware and estate planning documents were stolen from her house (*Id.*, at 118:17-121:18). Shortly before her deposition in this case in March 2017, Ms. Richert testified that a copy of Version C of the Robert Trust "appeared" in her mailbox; she does not know who placed it there (*Id.* at 137:23-139:5). Ms. Richert did not possess any other versions of the Robert Trust (*Id.*, 271:13-16).

On April 19, 2017, the Court granted plaintiff leave to subpoena additional documents from Fidelity related to the Robert Trust (doc. # 151; *see also* 04/19/17 Court Tr. at 16:17-22, 21:12-17). The documents Fidelity produced included two additional versions of the Robert Trust -- Versions A and B (doc. # 170: 05/30/17 Court Tr. at 3:20-4:13). On June 27, 2017, Ms. White sought leave to file her amended complaint to add a second count alleging breach of fiduciary duty against Ms. Richert as trustee of the Robert Trust, based on the discovery of multiple versions of the Robert Trust (doc. # 165), which we granted (doc. # 172).

This timeline of events makes it clear that Ms. White did not know -- and could not reasonably have known -- of differing versions of the Robert Trust more than five years before she filed the Amended Complaint on August 11, 2017. Ms. White could not have known that she had a possible claim against Ms. Richert for breach of fiduciary duty based on an alleged counterfeit version of the Robert Trust until at least 2017, when it became evident during discovery that there was more than one version of the Robert Trust. Therefore, the cause of action Ms. White added in her Amended Complaint did not accrue until sometime in 2017, and it is not time-barred.

# IV.

Ms. Richert also contends that even if not barred by the statute of limitations, there is no genuine issue of material fact for trial on the merits of Ms. White's remaining claim for breach of fiduciary duty by a trustee. The substantive law identifies which facts are material on summary judgment. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016). In this case, the material facts are those that Ms. White needs to succeed on her claim for breach of fiduciary duty, which in Illinois requires proof "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 433 (Ill. 2012).

Ms. Richert does not dispute that as trustee of the Robert Trust, she was in a fiduciary relationship with Ms. White, who -- like Ms. Richert -- was a beneficiary of that trust. *See, e.g., Hawkins v. Voss*, 29 N.E.3d 1233, 1238 (Ill. App. 2015) (trustees are among fiduciaries who "owe[] a duty of loyalty to the person or entity for whom the fiduciary is acting"). As trustee, Ms. Richert was "obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith." *Janowiak v. Tiesi*, 932 N.E.2d 569, 581-82 (Ill. App. 2010) (internal quotations and citations omitted). "[A] trustee owes a fiduciary duty to serve the interest of the beneficiaries with total loyalty, excluding all self-interest, and is prohibited from dealing with the trust's property for her individual benefit." *In re Estate of Muppavarapu*, 836 N.E.2d 74, 77 (Ill. App. 2005) (internal quotations and citations omitted). "The trustee must be mindful of the beneficiaries' interests, and the trustee cannot act inconsistently with the beneficiaries' interests, irrespective of the trustee's good or bad faith." *Carter v. Carter*, 965 N.E.2d 1146, 1156 (Ill. App. 2012) (internal quotations and citations omitted).

Ms. White contends that Ms. Richert breached her fiduciary duty as trustee by creating a counterfeit version of the Robert Trust (Version C) for her own personal gain, to increase the funds she was entitled to receive under the Robert Trust. Ms. Richert does not dispute that there is more than one version of the Robert Trust, and that the versions contain different language in Paragraph 5.4.1. However, Ms. Richert contends that the Court should decide as a matter of law that Version C is not counterfeit, and that in any event "[t]he language in the two trusts is different, but the language in both mean the same thing," because Ms. Richert and Ms. White would receive the same distributions from the Robert Trust under either version (Richert Mem. at 8, 11-12). Neither argument by Ms. Richert has any merit.

As to the first argument, Ms. Richert asks us to resolve disputed fact matters on summary judgment, which we are not at liberty to do. At a minimum, the existence of multiple versions of the Robert Trust, the unusual circumstances under which Ms. Richert says that Version C went missing and was then returned to her in time for her deposition, and the fact that Fidelity had copies of Versions A and B but not C, raise fact questions concerning which version is authentic and governing. These are questions for a jury at trial and not a court on summary judgment. *See, e.g., Deputy v. Lehman Bros.*, 345 F.3d 494, 511 (7th Cir. 2003) (holding that trial should have been held to resolve genuine issue of material fact as to the authenticity of a signature).

As for Ms. Richert's argument that the different language in Section 5.4.1 in Versions B and C of the Robert Trust mean the same thing, we find that reading implausible. "General rules of construction of written instruments apply to the construction of trust instruments, whether they are contracts, deeds, or wills." *In re Estate of Agin*, 57 N.E.3d 675, 682 (Ill. App. 2016) (internal citations and quotations omitted). "The primary goal in interpreting a trust is to determine and give effect to the settlor's intent, which a court will generally enforce unless contrary to law or

public policy. The best indicator of the settlor's intent is the plain language of the trust document itself, considered as a whole." *In re Estate of Lee*, 83 N.E.3d 570, 580 (Ill. App. 2017). "Where, however, there is an honest difference of opinion, a term in a trust is typically considered ambiguous," *Bank of Am., N.A. v. Judevine*, 26 N.E.3d 555, 561 (Ill. App. 2015), and "a trial court may rely on extrinsic evidence to aid construction," *Agin*, 57 N.E.3d at 682.

The plain language of each version of the Robert Trust is unambiguous as to the distribution to Ms. Richert. Under Section 5.4.1 of Versions A and B, Ms. Richert was entitled to 47 percent of trust estate *only if*, at the time of Mr. Richert's death, the Arizona property was not part of the trust estate or owned by Mr. Richert. On June 13, 2008, the day after he executed the Robert Trust, Mr. Richert conveyed all of his right, title and interest in his Arizona residence to the Robert Trust (White SOF, Ex. 15: Warranty Deed). Ms. Richert admits that Mr. Richert's Arizona residence remained in the Robert Trust when he died on November 9, 2009 (Richert Mem. at 9-10). Accordingly, under Versions A or B of the Robert Trust, Ms. Richert would not be entitled to Mr. Richert's residence *and* 47 percent of the trust estate.

By contrast, under Section 5.4.1 of Version C of the Robert Trust, Ms. Richert was entitled to 47 percent of the trust estate *in addition* to the Arizona property. As such, under Version C, Ms. Richert could be entitled to far more of the estate of the Robert Trust than under Versions A and B. If Ms. White proves that Ms. Richert forged Version C and thus obtained a greater share of the estate of the Robert Trust than she should have received, Ms. Richert would have breached her fiduciary duty to refrain "from dealing with the trust's property for her individual benefit." *Muppavarapu*, 836 N.E.2d at 77. *See also Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013) (a fiduciary has a duty to "refrain from seeking a selfish benefit during the relationship") (quoting *Neade v. Portes*, 739 N.E.2d 496, 440 (Ill. 2000)). Thus, genuine issues

16

of material fact thus remain as to Count II of the Amended Complaint, which alleges Ms. Richert breached her fiduciary duty to Ms. White as trustee of the Robert Trust.[5]

## CONCLUSION

For the reasons stated above, Ms. Richert's motion for summary judgment (doc. # 205) is GRANTED in part and DENIED in part. Ms. Richert's motion is granted as to Count I of the Amended Complaint, as set forth in the Petition, and denied as to Count II. Ms. White's request for attorney's fees (White Opp'n Br. at 9-10) and Ms. Richert's request for oral argument (Richert Reply at 1) are DENIED. We direct the parties to once again discuss settlement, in a genuine effort to draw this unfortunate family dispute to a close before subjecting each other to the rigors of a jury trial. We set the matter for a status hearing on September 18, 2018 at 9:00 a.m. for a report on the parties' discussions regarding settlement and to set a trial date.

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

DATE: August 28, 2018

---

[5] Both parties have obtained reports from purported experts in document examination that come to differing conclusions as to the authenticity of Mr. Richert's signed initials on the bottom of the page of Version C of the Robert Trust which includes Section 5.4.1 (*see* Richert SOF, Ex. 13: Report of Thomas W. Vastrick and Ex. 14: Report of Robin D. Williams).