# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KATHLEEN WHITE MURPHY,
 CO-ADMINISTRATOR OF THE ESTATE OF
 ANNA M. WHITE, ET AL.,

        Plaintiffs,

        v.

ELIZABETH K. RICHERT,

        Defendant.

No. 15 CV 8185

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Pending before the Court are defendant Elizabeth Richert's motion for an order dissolving *lis pendens* without a hearing [463][1]; defendant's motion for judgment on Count I [477]; defendant's motion to vacate [479]; defendant's motion for a new trial under Fed. R. Civ. P. 59(a)(1)(B) [484]; defendant's motion to disqualify judge [496]; and plaintiffs Kathleen White Murphy and Thomas White's motion to alter judgment under Fed. R. Civ. P. 59(a) and (e) [483]. For the reasons that follow, the Court denies each motion.

## I.    Defendant's Motion To Disqualify Judge

The Court turns first to defendant's motion under 28 U.S.C. § 455(a) to disqualify the undersigned from all further proceedings in this case. [496].

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

Defendant contends that "[i]t was not until the Court's May 27, 2021 Memorandum Opinion and Order" that the Court's "bias toward defendant became readily apparent[.]" [*Id.*] 1. Defendant adds that the Court's "post-judgment actions and inactions"–which include "forcing Defendant to far exceed the limitations of her disabilities, requiring Defendant to ask for and receive additional time within which to file both her motion for attorneys' fees and costs, and one additional motion"–"further evince[ ]" this bias. [*Id.*]. Finally, defendant asserts that the Court's "ongoing, improper, prejudicial treatment of Defendant in favor of Plaintiffs and their attorneys" violated defendant's constitutional rights and amounted to a "fraud on the court by the Court." [*Id.*] 2.

A judge must disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The purpose of this statute "is to preserve the appearance of impartiality." *Weddington v. Zatecky*, 721 F.3d 456, 461 (7th Cir. 2013). A movant must therefore show that "an objective, disinterested observer fully informed of the reasons for seeking recusal would entertain a significant doubt that justice would be done in the case." *United States v. Barr*, 960 F.3d 906, 919 (7th Cir. 2020).

A judge must also disqualify herself if she has "a personal bias or prejudice concerning a party[.]" 28 U.S.C. § 455(b)(1). Importantly for the present case, "bias cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that the officer had it in for the party for reasons unrelated to the officer's view of the law." *Keith v. Barnhart*, 473 F.3d 782, 789 (7th Cir. 2009); *see also Trask*

*v. Rodriguez*, 854 F.3d 941, 944 (7th Cir. 2017) ("adverse rulings are not evidence of judicial bias"). "Bias must be proven by compelling evidence, and it must be grounded in some form of personal animus that the judge harbors against the litigant." *Barr*, 960 F.3d at 920.

Defendant's motion does not present any grounds that would warrant my recusal under either § 455(a) or § 455(b). Rather, defendant's motion is based almost entirely on the Court's rulings in this case.[2] For example, at pages 2 through 4 of her motion, defendant renews her challenge to the Court's 2018 summary-judgment decision and the Court's 2017 decision permitting plaintiffs to amend their complaint. *See* [496] 2-4. At pages 7 through 9 of the motion, defendant argues that plaintiffs' claim for breach of fiduciary duty should have been dismissed because it is implausible under Rule 12(b)(6) and was not pleaded with particularity under Rule 9(b). *See* [*id.*] 7-9. Then, at page 6 and pages 12 through 13, defendant accuses plaintiffs and their lawyers of misconduct related to bringing the suit in 2015 and alleged tampering with evidence. *See* [*id.*] 6, 12-13. Finally, at page 13, defendant contends that the Court "stepp[ed] out of the shoes of the Court, and into the shoes of a witness for Plaintiffs" when it (1) found, in its Memorandum Opinion and Order entering judgment for plaintiffs, that the opinions offered by the parties' handwriting experts effectively canceled each other out, and (2) observed that the initials

---

[2] The Court observes that many of the rulings on which defendant bases her disqualification motion were issued by a different judge, Magistrate Judge Schenkier, who presided over this case with the parties' consent before his retirement and the case's subsequent reassignment to the undersigned.

purporting to be those of Robert Richert on the forged trust document were noticeably different than Robert Richert's known initials. [*Id.*] 13.[3]

Because the Court's "adverse rulings are not evidence of judicial bias," *Trask*, 854 F.3d at 944, an objective, disinterested observer fully informed of defendant's reasons for seeking recusal would not entertain significant doubt that justice would be done in this case. *See Barr*, 960 F.3d at 919.

That defendant's motion is driven by her dissatisfaction with the Court's rulings, as opposed to a legitimate concern over the Court's partiality, is further confirmed by Exhibit R to the motion. *See* [496-18]. This exhibit is a 46-page catalogue of supposed errors in the Court's "biased, prejudicial and defamatory May 27, 2021 Memorandum Opinion and Order." The issues that defendant raises in Exhibit R include (1) the Court's finding that defendant forged Version C of the Robert Trust, *see* [496-18] 1-5; (2) plaintiffs' alleged introduction of perjured testimony, *see* [*id.*] 7-8; (3) the Court's interpretation of the distributive language in the Robert Trust, *see* [*id.*] 17-19; (4) the Court's calculation of the damages to which plaintiffs are entitled, *see* [*id.*] 25-26; (5) the Court's finding that the Receipt and Release was unenforceable, *see* [*id.*] 33-37; and (6) the Court's finding that plaintiffs were entitled to punitive damages under Arizona law, *see* [*id.*] 40. While this is not an exhaustive list of the issues and errors raised by defendant's Exhibit R, it suffices to show that defendant's

---

[3] Because this case proceeded to a bench trial, it was the Court's duty to weigh the handwriting evidence introduced by each side and draw reasonable conclusions from the evidence presented to it. *See* Fed. R. Civ. P. 52(a)(1); *see also Turley v. Lawrence*, Case No. 3:08-CV-7-GCS, 2019 WL 2869832, at *3 (S.D. Ill. Jul. 3, 2019) ("as the trier of fact, Judge Williams was also permitted to consider, reject and weigh the evidence received at trial").

allegations of bias are based almost entirely on the Court's prior rulings, which are an insufficient basis for recusal. *See Barr*, 960 F.3d at 920; *Trask*, 854 F.3d at 944; *Keith*, 473 F.3d at 789.

Defendant also contends that the Court's post-trial and post-judgment scheduling orders, which set briefing schedules for defendant's motion to dissolve a *lis pendens* respecting the Buffalo Grove property and for defendant's motion for attorney's fees and costs, are evidence of bias. *See* [496] 1; [496-18] 39-40.

As defendant observes, the motion to dissolve the *lis pendens* was filed on May 24, 2021. [463]. Because the Court was then in the process of finalizing its Memorandum Opinion and Order, the Court set a short response date for plaintiffs' response to the motion. [464]. After reviewing the briefs, the Court determined that the pleadings did not permit the Court to make an informed ruling on the motion–particularly because the parties were unaware of the findings of fact and conclusions of law set forth in the Court's Memorandum Opinion and Order, which in the Court's view could affect the *lis pendens* issue. Accordingly, after entering judgment on May 27, 2021, the Court set a new briefing schedule that directed plaintiffs to address two issues that the Court determined were relevant to defendant's motion, and gave defendant an opportunity to reply to their response. *See* [469]. This kind of mundane briefing order, directing the parties to address specific issues so that the Court could make an informed ruling on a pending motion, would not cause a reasonable observer to question the undersigned's impartiality. *See Liteky v. United States*, 510 U.S. 540,

556 (1994) ("A judge's ordinary efforts at courtroom administration . . . remain immune" and do not establish bias).

Nor does the Court's effort to set a reasonable briefing schedule on defendant's motion for attorney's fees and costs support the disqualification motion. On June 9, 2021, defendant moved the Court for leave to file the motion within "a reasonable time subsequent to" a doctor's appointment that was scheduled for July 22, 2021. [474] 4. The Court granted the request and set August 2, 2021 as the deadline for defendant's motion. [476]. At defendant's request, this deadline was later extended to September 27, 2021, based on a doctor's note stating that defendant's condition had substantially deteriorated in recent months. *See* [495]. The Court's effort to set a briefing schedule that balanced the Court's desire to resolve the issue in a reasonably prompt fashion while also accounting for defendant's limitations is not something a reasonable observer would see as evidence of the Court's bias against defendant.

For all these reasons, defendant's motion to disqualify judge [496] is denied.

## II. Defendant's Motion For A New Trial

The Court next turns to defendant's motion for a new trial, which was filed under Civil Rule 59(a)(1)(B). [484].

Rule 59(a)(1)(B) provides that, "after a nonjury trial," the Court may grant a new trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). "'A motion for a new trial in a nonjury case . . . should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons.'" *Quality Leasing*

6

*Co., Inc. v. Int'l Metals LLC*, Case No. 1:18-cv-1969-TWP-MG, 2021 WL 4193546, at *2 (S.D. Ind. Sept. 15, 2021) (quoting 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2804). "A manifest error is not demonstrated by the disappointment of the losing party; instead, it is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted).

Most of defendant's motion is devoted to the related arguments that this case should have been litigated in Arizona state court, rather than a federal district court in Illinois, and that plaintiffs made false representations to the Court throughout the litigation to dissuade the Court from reaching that conclusion. *See* [484] 3-5. More specifically, defendant argues that (1) the Arizona circuit courts have exclusive jurisdiction over proceedings brought by a beneficiary or trustee concerning the administration of an Arizona trust, and (2) by accepting a distribution from the Robert Trust, Anna White submitted to the exclusive personal jurisdiction of the Arizona state courts. [*Id.*] 6-8.

These arguments provide no basis for granting a new trial. Most importantly, the Court has repeatedly considered and rejected defendant's arguments that venue in the Northern District of Illinois was improper, that the case should have been transferred to an Arizona state court because the Arizona courts have exclusive jurisdiction over plaintiffs' claims, and that plaintiffs have hoodwinked the Court into accepting that it has jurisdiction to adjudicate this dispute. *See White v. Richert*, Case No. 15 CV 8185, 2016 WL 2582083, at *5-6 (N.D. Ill. June 28, 2016) (denying

7

defendant's motion under Fed. R. Civ. P. 12(b)(3) to dismiss for improper venue and/or transfer venue); *see also* [311] 17-18 (rejecting arguments that Arizona courts had exclusive subject-matter jurisdiction over plaintiffs' breach-of-fiduciary-duty claim and exclusive personal jurisdiction over Anna White in her capacity as beneficiary of Robert Trust). Defendant's motion does not engage with the Court's prior rulings, let alone show that the Court's decisions were manifestly erroneous.

Defendant also argues that Anna White was not competent to sue, and that plaintiffs–her children and the co-administrators of her estate–wrongfully concealed this fact from her and the Court. *See* [484] 2 & n.1. The Court addressed this issue in its Memorandum Opinion and Order entering judgment for plaintiffs, *see* [467] 32-38; *Murphy v. Richert*, No. 15 CV 8185, 2021 WL 2156448, at *15-17 (N.D. Ill. May 27, 2021), but defendant again fails to address that ruling or demonstrate that it was manifestly erroneous. Defendant's rehashing of this argument is not a basis for a new trial. *See O'Donnell v. Caine Weiner Co., LLC*, No. 14 C 3869, 2018 WL 10798046, at *1 (N.D. Ill. Mar. 23, 2018) ("A motion for new trial is not properly used to relitigate issues previously presented, but to raise issues that could not have been raised earlier.") (internal quotation marks and citation omitted).

For these reasons, defendant's motion for a new trial and to transfer case to the Maricopa County, Arizona Superior Court [484] is denied.

## III. Defendant's Motion To Enter Judgment

In her next motion, defendant asks the Court to enter judgment in her favor and against plaintiffs on Count I of plaintiff's amended complaint. [477].

Count I sought an order requiring defendant to transfer title to Anna White's residence in Buffalo Grove, Illinois from defendant, in her capacity as trustee of the Robert Trust, to Anna White; an accounting of the Robert Trust; and an order dissolving the Receipt and Release. *See* [1-1] 3-4 (original state court petition removed to this Court by defendant); *see also* [173] 1 (first amended complaint incorporating claim in state court petition by reference). In August 2018, the Court granted summary judgment to defendant on this claim, holding that there was no genuine dispute that the claim was untimely. *See White v. Richert*, Case No. 15 CV 8185, 2018 WL 4101512, at *5-6 (N.D. Ill. Aug. 28, 2018). The Court also denied defendant's motion for summary judgment as to Count II of the amended complaint, which was the breach-of-fiduciary-duty claim that was decided at the bench trial. *Id.* at *6-8. Citing the Court's grant of summary judgment in her favor on Count I, defendant contends that she is entitled to "an Order of Judgment against Plaintiffs and in favor of Defendant for Count I of Plaintiffs' *First Amended Complaint*, including compensatory damages pursuant to Doc. # 196, and ¶ 3, supra, costs, pre-judgment interest and post-judgment interest thereon." [477] 3.[4]

The Court rejects this argument and will deny the motion to enter judgment.

First, to the extent that defendant challenges the Court's failure to enter a separate judgment respecting Count I of the amended complaint, there was then—and still is now—no basis for the Court to do so. The Court's August 2018 decision was an

---

[4] The Court notes that "Doc. # 196" refers to defendant's answer to plaintiffs' first amended complaint [196], and "¶ 3, supra" refers to paragraph 3 of the motion to enter judgment, where defendant recites the answer's prayer for relief. *See* [196] 6.

interlocutory order that disposed of only one of plaintiffs' claims, leaving the other claim–as well as two of defendant's counterclaims (one of which was later voluntarily dismissed)–for trial. *See Ferguson v. McDonough*, 13 F.4th 574, 579 (7th Cir. 2021) ("A district court order denying summary judgment is ordinarily unappealable since it is not a final decision under § 1291 but rather an interlocutory ruling."); *Brown v. Chybowski*, Case No. 14-cv-1066-pp, 2016 WL 7432508, at *1 (E.D. Wis. Dec. 23, 2016) ("An 'interlocutory' order is one that decides only one issue in the case, rather than resolving the entire case. This court's partial denial of summary judgment didn't decide the entire case, so it was an 'interlocutory' order."). Furthermore, now that the Court has decided the remaining claims and entered judgment, there is no need to enter a separate judgment respecting the grant of summary judgment to defendant on Count I because that ruling is encompassed within the Court's final judgment. *See Sere v. Bd. of Trs. of Univ. of Illinois*, 852 F.2d 285, 288 (7th Cir. 1988) ("Rulings on interlocutory orders are encompassed within a subsequent final judgment and may be reviewed as part of that judgment.").

Second, to the extent that defendant contends she is entitled to affirmative relief respecting Count I of the amended complaint–in the form of damages, title to the Buffalo Grove property, or some other relief–her contention is based on a misunderstanding of the Court's prior ruling. In granting defendant's summary-judgment motion, the Court decided only that the claim was untimely; it did not decide who should have title to the Buffalo Grove home, whether an accounting of the Robert Trust should occur, or whether the Receipt and Release should be invalidated.

Furthermore, while defendant filed a counterclaim seeking affirmative relief relating to the Buffalo Grove property, the Court dismissed all but two of her claims as implausible, *see White v. Richert*, Case No. 15 CV 8185, 2016 WL 6139929, at \*4-9 (N.D. Ill. Oct. 21, 2016), defendant then voluntarily dismissed one of those claims, and the Court found at trial that defendant failed to carry her burden of proof on her remaining claim.

For these reasons, defendant's motion for entry of judgment [477] is denied.

## IV. Defendant's Motion To Vacate

Defendant has also moved to vacate the Court's minute orders setting and modifying the briefing schedule on defendant's motion to dissolve the *lis pendens*. [479]. Defendant argues that the Court should have ruled on her motion to dissolve the *lis pendens* before it issued its Memorandum Opinion and Order, and that the Court "improperly granted Plaintiffs a second bite at the apple" by ordering plaintiffs to file an amended response to the motion that addressed certain findings of fact and conclusions of law set forth in the Court's decision. [479] 7. Defendant asks that the Court strike plaintiffs' original and supplemental responses and grant her motion to dissolve the *lis pendens*. [*Id.*] 11.

This motion is denied. Contrary to defendant's argument, the mere fact that she filed a motion to dissolve the *lis pendens*–a motion that, as discussed in more detail below, failed to cite any authority in support of her request–did not entitle her to an order granting the motion. Rather, plaintiffs were entitled to a fair opportunity to respond to defendant's argument, and the Court had the discretion to call for a

supplemental brief from plaintiffs that would address the impact of the Court's Memorandum Opinion and Order on defendant's request. Finally, the Court's briefing schedule permitted defendant to file a reply to the plaintiffs' response, so defendant has no basis to claim that anything the Court did prejudiced her.[5]

## V.    Motion To Dissolve Lis Pendens

The Court now turns to defendant's "Motion For Order Dissolving Lis Pendens Without Hearing." [463]. By this motion defendant seeks to dissolve the *lis pendens* notice respecting the Buffalo Grove property that plaintiffs' counsel recorded in September 2015 with the Lake County, Illinois Recorder of Deeds. [*Id.*] 1-2; *see also* [463-1] 1-2 (*lis pendens* notice). Defendant argues that the Court's grant of summary judgment in her favor on Count I of plaintiffs' first amended complaint–the Count by which plaintiffs sought to obtain title to the Buffalo Grove home–"entitles [her] to the equitable relief sought herein, as a matter of law, and law of the case." [463] 2.

Plaintiffs oppose the motion, arguing that "[a] *lis pendens* is appropriate where 'there exists a proceeding that may affect good title to the property.'" [471] 2 (quoting *Chicago Title Ins. v. Aurora Loan Servs., LLC*, 996 N.E.2d 44, 51 (Ill. App. 2013)). Plaintiffs contend that this case "may" affect good title to the Buffalo Grove home because they "have the right to appellate review of [the Court's] . . . order granting [defendant] summary judgment on Count I of their amended complaint," and they

---

[5] Defendant's further requests that the Court strike plaintiffs' original and supplemental responses, hold plaintiffs and their attorneys "in contempt of the Court's August 28, 2018 Memorandum Opinion and Order" and sanction them, order plaintiffs to file a sworn declaration stating to whom they have disclosed "copies of any documents in this case relating to the current trustee of the Robert Trust," and require plaintiffs to state whether they have removed any property from, or changed the locks on, the Buffalo Grove home are denied.

"likely will argue that [the Court's] dismissal of Count I . . . was error and seek reversal of the same." [*Id.*] 1, 3.

For the following reasons, the Court concludes that the *lis pendens* is no longer effective now that final judgment in this case has been entered.

A *lis pendens* is a written notice stating that a lawsuit "affecting or involving" certain real estate has been filed. *See* 735 ILCS 5/2-1901. "A *lis pendens* is not an injunction as it does not formally restrain sale, conveyance, or purchase" of the property at issue. *First Midwest, a Div. of Jacksonville Savings Bank v. Pogge*, 687 N.E.2d 1195, 1198 (Ill. App. 1997). Rather, "the filing of a *lis pendens* notice with the recorder of deeds constitutes constructive notice of the lawsuit to any person who subsequently acquires an interest in that property." *Sobilo v. Manassa*, 479 F. Supp. 2d 805, 823 (N.D. Ill. 2007). "A person who acquires the property after the recording of the *lis pendens* notice takes the property subject to any superior interests that may be determined in the lawsuit." *Id.*

Unfortunately, the parties' briefs do not discuss any Illinois cases or other authority addressing whether the *lis pendens* can or should remain in place now that the Court has entered final judgment in this case. Defendant's motion and her reply brief, *see* [480] 1-5, are bereft of any authority in support of her request to dissolve the *lis pendens*. And while plaintiffs rely on the *Chicago Title Insurance* case for the proposition that a *lis pendens* may properly be recorded as long as litigation "may affect good title to the property," that case addresses a different issue than the one presented here. The issue before the Illinois Appellate Court in *Chicago Title*

13

*Insurance* was whether a recorded *lis pendens*, which gave notice of a prior sale of the property based on delinquent taxes, constituted an encumbrance on the property for purposes of the plaintiff's claim that defendant had breached a special warranty deed. *See* 996 N.E.2d at 49. Because a *lis pendens* is only a means of providing notice that "there exists a proceeding that may affect good title to the property," the court held that it was not an encumbrance. *Id.* at 51. Nothing in *Chicago Title Insurance* addresses whether a *lis pendens* remains effective or should be dissolved after entry of final judgment.

In the Court's view, the controlling case on this issue is the Seventh Circuit's decision in *Duncan v. Farm Credit Bank of St. Louis*, 940 F.2d 1099 (7th Cir. 1991). Plaintiffs in that case sued in Illinois state court to enforce a right-of-first-refusal to repurchase their farmland and recorded a *lis pendens*. *Id.* at 1101. Defendant removed the case to federal court, and the district judge dismissed the suit on the merits. *Id.* Plaintiffs did not move to stay the judgment pending an appeal, and defendant sold the property to a third party while the appeal was pending. *Id.* Defendant argued that the sale of the property mooted the appeal, while plaintiffs contended that "the case is not moot because they filed a *lis pendens*, providing constructive notice of the disputed nature of the property" to the third-party purchaser. *Id.*

Applying Illinois law governing "the operation and scope of the *lis pendens* filed in this case," the Seventh Circuit held that the appeal was moot. *Duncan*, 940 F.2d at 1101. "In Illinois," the court explained, "a *lis pendens* terminates upon a final

14

judgment or decree." *Id.* (citing *Town of Libertyville v. Moran*, 535 N.E.2d 82 (Ill. App. 1989) and *Eich v. Czervonko*, 161 N.E. 864 (Ill. 1928)). Because the third party had purchased the farmland at issue after the district court dismissed plaintiffs' suit–at which point the *lis pendens* had terminated–the Seventh Circuit concluded that the *lis pendens* did not protect plaintiffs' interest in the property during the appeal. *Id.* at 1101-02. Instead, plaintiffs needed to seek, but had not sought, "a stay of judgment pending appeal to protect its interest in the underlying property." *Id.* at 1102.

The Court's entry of final judgment in this case had the effect of terminating the *lis pendens* recorded by plaintiffs' counsel. *See Duncan*, 940 F.2d at 1101-02; *Moran*, 535 N.E.2d at 83-84; *Hardiman v. Hardiman*, 2012 IL App (1st) 102384-U, ¶ 49. Because the *lis pendens* has terminated, the Court denies defendant's motion to dissolve the *lis pendens* as moot.

## VI. Plaintiffs' Motion To Amend Judgment

Finally, the Court turns to plaintiffs' motion to amend judgment. [483]. Plaintiffs ask that the judgment be amended to (1) reflect that plaintiffs are entitled to a 62.51% interest in the Buffalo Grove home; (2) or, in the alternative, quiet title to the Buffalo Grove home in plaintiffs' names in their capacity as the independent co-administrators of Anna White's estate; (3) reinstate Count I of their first amended complaint to conform to the trial evidence that defendant "committed ethical violations at least as Anna White's former attorney" within two years of the filing date of Anna White's original state-court petition; and (4) conform their amended complaint to the evidence introduced at trial establishing that defendant should be

15

equitably estopped into surrendering a one-half interest in the Carefree home to plaintiffs.

Plaintiffs' motion invokes Rule 59(a)(2) and Rule 59(e). As noted above, relief is available under Rule 59(a)(2) only if the movant establishes that the Court committed a manifest error of law or fact. *See Quality Leasing Co.*, 2021 WL 4193546, at *2. Similarly, "[a] motion under Rule 59(e) may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Neither motion permits a party to raise an argument that could have been made earlier or present evidence that should have been presented earlier. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."); *Ashraf-Hassan v. Embassy of France*, 185 F. Supp. 3d 94, 112 (D.D.C. 2016) ("The purpose of Rule 59(a)(2) is not to introduce new evidence that was available at the time of trial but was not proffered, to advance new theories, or to secure a rehearing on the merits.") (internal quotation marks omitted).

### A. Plaintiffs' Interest in the Buffalo Grove Home

Plaintiffs first argue that the Court should award them a 62.51% interest in the Buffalo Grove home. Plaintiffs base this request on the Court's damages award, where, plaintiffs contend, the Court "concluded that 47% and an intestate third of 47% of the Robert Trust belong to plaintiffs as co-administrators of their mother's

estate." [483] 1. Plaintiffs assert that the Court has authority under Rule 57 to issue a declaratory judgment to this effect because the prayer for relief in their amended complaint–which did not specifically request an interest in the Buffalo Grove home, *see* [173] 3–asked the Court to award "whatever other relief this Court deems appropriate." [483] 2. Defendant opposes this request, arguing that the Court's August 2018 summary-judgment ruling forecloses plaintiffs from recovering any relief respecting the Buffalo Grove home. [487] 2-3.

The Court concludes that plaintiffs' request is not proper under either Rule 59(a)(2) or Rule 59(e).

First, plaintiffs do not contend that the Court's failure to award them a 62.51% interest in the Buffalo Grove home represented a manifest error of law or fact–and for good reason. Plaintiffs did not request this form of relief in their proposed findings of fact and conclusions of law that were filed before the bench trial began. *See* [328] 39-40, at ¶¶ 203-06. Nor did they request this relief in their post-trial brief. *See* [460] 13-14. Rather–and in spite of the Court's ruling in August 2018 dismissing Count I of their amended complaint, which sought an order transferring title to the Buffalo Grove home to Anna White–plaintiffs argued that they were entitled to the Buffalo Grove home outright. *See* [328] ¶¶ 199, 203; [460] 13. But as the Court explained in its Memorandum Opinion and Order, the Court's grant of summary judgment to defendant on Count I foreclosed plaintiffs from obtaining title to the Buffalo Grove home. *See* [467] 80; *Murphy*, 2021 WL 2156448, at *36 ("[T]itle to the Buffalo Grove home was the subject of count one of plaintiffs' first amended complaint, but the Court

dismissed that claim as time-barred nearly three years ago.") (internal citation omitted); *see also* [467] 80 n.25; *Murphy*, 2021 WL 2156448, at *36 n.25 ("the Court's summary-judgment ruling clearly foreclosed plaintiff[s] from obtaining title to the Buffalo Grove home").[6]

Plaintiffs contend that the issue of whether "the Buffalo Grove home is [defendant's]" or whether "it is an asset of the Robert Trust" was "fully tried with the consent of [defendant], albeit premised on her *idee fix* that she owns the Buffalo Grove home personally." [483] 1. Plaintiffs notably fail to cite to the trial record to substantiate their claim that defendant consented to litigate this issue. Moreover, defendant repeatedly objected to plaintiffs' questions seeking to elicit information about title to or the ownership of the Buffalo Grove home on the ground that such lines of questioning were relevant only to the dismissed Count I of the amended complaint. *E.g.*, [449] 83-84 (defendant's objection to questions about current status of Buffalo Grove home); [451] 24, 25-26 (defendant's objections to questions about Buffalo Grove home's warranty deed and tax bills); *see also* [*id.*] 35-36 (recognizing defendant's standing objection to "this line of questioning with respect to anything

---

[6] The Court is aware that a party's failure to request a specific form of relief is not, standing alone, necessarily fatal to its ability to recover that relief. Civil Rule 54 provides that, with the exception of default judgments, every judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). "Rule 54(c) is intended to make 'clear that a judgment should give the relief to which a party is entitled, regardless of whether it is legal or equitable or both.'" *U.S. Commodity Futures Trading Comm'n v. Reisinger*, Case No. 11 CV 8567, 2019 WL 4464387, at *8 (N.D. Ill. Sept. 18, 2019) (quoting *Old Republic Ins. Co. v. Employers Reinsurance Corp.*, 144 F.3d 1077, 1080 (7th Cir. 1998)). But "Rule 54(c) does not allow the district court to award relief based on a theory that was not properly raised at trial" or "relief that would unfairly prejudice the non-prevailing party." *Old Republic Ins. Co.*, 143 F.3d at 1080-81. Because plaintiffs' request implicates at least the former concern, their request for a 62.51% interest in the Buffalo Grove home is not authorized by Rule 54(c).

related to this house was under Count One, and Count Two has to do with the trust document and accusation about the trust document and not with the property at 49 Willow Park").

In any event, as the Court noted in its Memorandum Opinion and Order, there is no dispute that title to the Buffalo Grove home remains in defendant's name in her capacity as trustee of the Robert Trust. [467] 16; *Murphy*, 2021 WL 2156448, at *7. But whether plaintiffs were entitled to recover as damages a 62.51% interest in the property was not an issue that was litigated–let alone litigated with defendant's consent–at the bench trial.

Because plaintiffs did not seek to prove at trial that they were entitled to a 62.51% stake in the Buffalo Grove home, and because plaintiffs did not request that relief before or during trial, plaintiffs may not try to obtain it now, for the first time, in a post-trial motion. *See Exxon Shipping Co.*, 554 U.S. at 485 n.5; *Ashraf-Hassan*, 185 F. Supp. 3d at 112; *see also U.S. Neurosurgical, Inc. v. City of Chicago*, 02 C 4894, 2007 WL 9813352, at *1 n.1 (N.D. Ill. Sept. 19, 2007) ("A new trial in a court action will not lie merely to relitigate old matters, nor will a new trial normally be granted to enable the movant to present his case under a different theory than he adopted at the former trial.") (internal quotation marks omitted).

Second, there is no merit to plaintiffs' argument that they are entitled to a 62.51% interest in the Buffalo Grove home based on the Court's "conclu[sion] that 47% and an intestate third of 47% of the Robert Trust belongs to plaintiffs as co-administrators of their mother's estate." [483] 1. This is so because the Court drew

19

no conclusion and made no finding in its Memorandum Opinion and Order respecting what percentage of the Robert Trust "belongs to plaintiffs[.]" Instead, as the following passages from the Court's decision–including the one relied on by plaintiffs–make clear, the Court found that defendant's breach of her fiduciary duty caused Anna White to sustain $95,850.53 in damages, a sum equal to one-third of the forty-seven percent of the Robert Trust's assets that were not distributed to a named beneficiary:

- "Thus, defendant was obligated by the terms of the Robert Trust to distribute to Anna White . . . $95,850.83 ($611,814.45 x 0.47 x 0.33 = $95,850.83). Because defendant failed to make this distribution, she breached her fiduciary duty to Anna and caused Anna to suffer damages in the amount of $95,850.83." [467] 49; *Murphy*, 2021 WL 2156448, at *22.

- "[D]efendant breached her fiduciary duty to Anna White by creating Version C of the Robert Trust and failing to distribute to Anna White her intestate share of the forty-seven percent of the trust estate–$95,850.83–not distributed to a named beneficiary." [467] 73; *Murphy*, 2021 WL 2156448, at *32.

Besides misrepresenting the Court's factual and legal findings, plaintiffs' argument is also inconsistent with the Court's ruling that plaintiffs were not entitled to recover the forty-seven percent of the Robert Trust to which Anna White was entitled as a named beneficiary and that defendant allegedly did not distribute to her. As the Court explained, this relief:

> is not causally connected to the breach of fiduciary duty that plaintiffs proved in this case. Rather, defendant's breach of fiduciary duty–creating a fake version of the trust and using it to steal nearly half of the Robert Trust's assets–caused Anna White to lose only her one-third share of the forty-seven percent of the trust estate that the Robert Trust did not distribute to a named beneficiary. *See* [173] 3 (requesting entry of judgment "disgorging the trust proceeds to which Elizabeth Richert was not entitled"). To the extent plaintiffs sought to recover any portion of Anna White's forty-seven-percent share of the trust estate that defendant failed to distribute, that relief was associated with count one of their amended complaint, which the Court dismissed as time-barred.

> *See* [1-1] 5 (prayer for relief requesting "an accounting for the Robert L. Richert Trust"). Because the only claim that might have entitled plaintiffs to recover the outstanding portion of Anna White's share as a named beneficiary of the Robert Trust was dismissed with prejudice, plaintiffs are not entitled to the requested relief.

[467] 81; *Murphy*, 2021 WL 2156448, at *36-37.

As these passages (and the remainder of the Court's Memorandum Opinion and Order) demonstrate, the principal issue at the bench trial was whether defendant had counterfeited a version of the Robert Trust in order to steal 47% of the trust estate to which she was not entitled. The trial was not more generally about determining what portion of the Robert Trust "belong[ed] to plaintiffs" or any of the other trust beneficiaries. And while plaintiffs had sought an accounting of the Robert Trust and an order transferring title to the Buffalo Grove home to themselves, the Court dismissed that claim on statute-of-limitations grounds long ago. Because the Court accordingly had no occasion to find–and in fact made no finding respecting– what portion of the Robert Trust "belong[ed] to plaintiffs," there is no basis in the Court's decision to award plaintiffs a 62.51% interest in the Buffalo Grove home.

## B. Request to Quiet Title

For similar reasons, the Court denies plaintiffs' request to quiet title to the Buffalo Grove home in their names as the co-administrators of Anna White's estate. *See* [483] 4-7.

Most importantly, the Court dismissed Count I of plaintiffs' first amended complaint–the count that sought title to the Buffalo Grove home–long before trial, and thus the trial was not an opportunity for plaintiffs to prove a quiet-title case.

21

Nothing in plaintiffs' proposed findings of fact and conclusions of law, moreover, would have put defendant or the Court on notice that they were making a quiet-title claim for the Buffalo Grove property. *See* [328] 39-40, ¶¶ 199-207; [*id.*] 41-47. Plaintiffs contend that the final pretrial order "put the Buffalo Grove home ownership at issue," but nothing in the pretrial order indicates plaintiffs intended to pursue an action to quiet title at trial. *See* [280]. Finally, the Court notes again that plaintiffs do not argue that it was a manifest error not to quiet title to the Buffalo Grove property in their names as the administrators of Anna White's estate. *See* [483] 4-7.

For these reasons, plaintiffs' request to quiet title to the Buffalo Grove home is denied.

## C.     Reinstatement of Count I

Plaintiffs next ask that the judgment be amended to reinstate Count I of their first amended complaint. [483] 7-10. According to plaintiffs, evidence introduced at trial established that, contrary to the Court's ruling in August 2018, this claim was timely. In support, plaintiffs cite to testimony that defendant allegedly breached the fiduciary duty she owed Anna White, in her capacity as Anna's attorney, within two years of the filing of Anna's original complaint. [*Id.*] 8-9.

The Court denies this request. On defendant's motion, the Court granted her summary judgment on Count I because the undisputed evidence then before the Court established that the claim was untimely. *See White*, 2018 WL 4101512, at *5-6. Plaintiffs now seek to use evidence of the alleged attorney-client relationship between Anna White and defendant–an issue that was not relevant to plaintiffs'

breach-of-fiduciary-duty claim against defendant in her capacity as trustee of the Robert Trust–that was introduced at trial to effectively undo the Court's prior summary-judgment ruling. The Court finds that this would be unfairly prejudicial to defendant.

Moreover, this case is distinguishable from the only case that plaintiffs cite in support of their request, *Wolf Point Co-op v. Raysure Ins. Brokers, Inc.*, No. 85 C 2004, 1988 WL 82551 (N.D. Ill. Aug. 1, 1988). In that case, the district court had granted summary judgment to the defendants on one of plaintiff's claims, finding that plaintiff "failed to make the legal argument necessary to consider if defendants were agents and also failed to clearly reference which facts were supposed to show defendants were agents." *Id.*, at *1. When plaintiff moved for reconsideration of the agency issue before the trial began, the defendants–who "could have argued that the agency issue was waived because not adequately argued in the initial briefs"–instead waived their waiver argument and responded on the merits. *Id.* The district court granted the motion to reconsider and reinstated the previously dismissed claim.

This case is very different. Plaintiffs did not seek to reinstate Count I before the bench trial began, nor is their motion based on arguments or evidence that was before the Court at the time of the summary-judgment ruling. Instead, plaintiffs rely on new evidence introduced at trial that was not relevant to their breach-of-fiduciary-duty claim and to which defendant objected. *See, e.g.*, [449] 46. Granting plaintiffs' request would be unfairly prejudicial to defendant, who was entitled to rely on the

Court's order dismissing Count I. Accordingly, plaintiffs' motion is denied to the extent it seeks reinstatement of Count I.

### D. Equitable Estoppel Claim for Half the Value of the Carefree Home

Finally, plaintiffs contend that the judgment should be amended to award them a one-half interest in Robert Richert's former home in Carefree, Arizona. [483] 10-11. According to plaintiffs, their trial evidence established that (1) defendant "lulled Anna White into complacency" by falsely representing that "half of Robert's home . . . was going to Anna White, but that Richert was not ready to sell it because the house needed improvements and the real estate market was severely depressed," and (2) Anna relied on these representations in deciding not to press defendant to distribute to Anna her proper share of the Robert Trust. [*Id.*] 10. Defendant argues that plaintiffs' request is inconsistent with a representation plaintiffs made to the Court in 2017, in which plaintiffs acknowledged that "the Arizona property 'is off the table' because whichever version of the trust document governs, 'the Arizona home goes to the defendant.'" [487] 10.

"Rule 15(b)(2) provides that issues 'tried by the parties' express or implied consent' must be treated in all respects as if raised in the pleadings, and a party may move 'at any time, even after judgment,' to amend the pleadings to conform to the evidence." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1106 (7th Cir. 2013) (quoting Fed. R. Civ. P. 15(b)(2). "The standard for a motion under Rule 15(b)(2) is whether the opposing party had a fair opportunity to defend and whether he could have presented

24

additional evidence had he known sooner the substance of the amendment." *Id.* (internal quotation marks omitted).

"A court will not imply a party's consent to try an unpleaded claim, however, merely because evidence relevant to a properly pleaded issue incidentally tends to establish that unpleaded claim." *Colbert v. City of Chicago*, 851 F.3d 649, 656-57 (7th Cir. 2017) (internal brackets and quotation marks omitted). "A district court is well within its discretion to deny a motion seeking to add a new theory of liability if the defendant has not consented to it." *Reynolds*, 737 F.3d at 1106 (internal quotation marks omitted).

Plaintiffs have not demonstrated that defendant consented to try the equitable-estoppel claim concerning their entitlement to a one-half interest in the Carefree home. Most importantly, defendant repeatedly objected–and even obtained standing objections–when plaintiffs elicited testimony about the Carefree home in general and that defendant had allegedly told plaintiffs and Gary Steciuk that Anna White was entitled to a one-half interest in the home. *See* [451] 41, 43; [*id.*] 43 (defendant's standing objection "regarding any line of questioning with respect to the Carefree home . . . [b]ased on the Court's prior ruling with regard to this property and admission that it is not part of this litigation"); [452] 35 (objection to plaintiffs' testimony concerning deeds associated with Carefree home); [*id.*] 36 (recognizing defendant's standing objection before Kathleen White Murphy testified that defendant had told her Anna White would get half of Carefree home); [454] 19-20 (standing objection to Gary Steciuk's testimony concerning Carefree property).

Because defendant did not consent to try this issue, leave to amend may not be granted under Rule 15(b)(2). *See Reynolds*, 737 F.3d at 1106; *see also Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875-76 (7th Cir. 2011) (affirming denial of request to amend complaint after trial because "defendants did not consent to add this theory of liability"); *Mendez v. Dental*, No. 04 C 4159, 2008 WL 1883459, at *3 (N.D. Ill. Apr. 25, 2008) ("Mendez's motion and reply brief provide extensive arguments as to why Mendez should prevail under the piercing the corporate veil theory. However, Mendez fails to show that the consent requirement is satisfied in this case.").

Furthermore, the Court observes that plaintiffs have not explained why they did not seek to amend their complaint before trial to add a claim for equitable estoppel. In the Court's view, this is a significant omission because the proposed equitable-estoppel claim was based largely on plaintiffs' own testimony about statements that defendant had made to each of them. *See* [467] 13; *Murphy*, 2021 WL 2156448, at *6. It was not, in other words, an unforeseeable issue that emerged unexpectedly during the trial itself. Because plaintiffs' request seeks to add a new theory of liability late in the proceedings without justification, their request is denied. *See Aldridge,* 635 F.3d at 876 (affirming denial of post-trial amendment because "amendment would have added a new theory of liability to the case at the late stage of the proceedings").

## Conclusion

For the foregoing reasons, the parties' post-trial motions [463, 477, 479, 483, 484, 496] are denied. The Court will issue a decision on the parties' motions for attorneys' fees in a separate order and in due course.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 26, 2021**